**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| SOLEDAD CRUZ RAMIREZ,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants-Respondents. | Case No. 2:25-cv-02110-RFB-DJA<br><br>**ORDER** |

Before the Court is the (ECF No. 2) Motion for Preliminary Injunction by Petitioner Soledad Cruz Ramirez. For the following reasons, the Court grants the Motion.

**I.   INTRODUCTION**

This case is one of a rapidly growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA,

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in forty similar challenges. See, e.g., Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL

specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to challenge the factual or legal basis for their detention.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide

---

3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK, 2025 WL 3524773 (D. Nev. Dec. 8, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW, 2025 WL 3524774 (D. Nev. Dec. 9, 2025); Morales Rondon v. Bernacke, No. 2:25-cv-01979-RFB-BNW, 2025 WL 3527246 (D. Nev. Dec. 9, 2025); Marquez v. Knight, No. 2:25-cv-02203-RFB-NJK, 2025 WL 3527244 (D. Nev. Dec. 9, 2025); Flores-Garcia v. Bernacke, No. 3:25-cv-00688-RFB-CSD, 2025 WL 3527247 (D. Nev. Dec. 9, 2025); Garcia Soto v. Knight, No. 2:25-cv-02138-RFB-BNW, 2025 WL 3537405 (D. Nev. Dec. 10, 2025); Quinonez Orosco v. Lyons, No. 2:25-cv-02240-RFB-EJY, 2025 WL 3539275 (D. Nev. Dec. 10, 2025); Gallegos Rangel v. Knight, No. 2:25-cv-02161-RFB-BNW, 2025 WL 3539303 (D. Nev. Dec. 10, 2025); Salguero v. DHS, No. 2:25-cv-02328-RFB-NJK, 2025 WL 3539276 (D. Nev. Dec. 10, 2025); Mejia Soto v. DHS, No. 2:25-cv-02281-RFB-EJY (D. Nev. Dec. 11, 2025); Perez Gonzalez v. Noem, No. 2:25-cv-02137-RFB-DJA (D. Nev. Dec. 11, 2025).

basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also Barco Mercado v. Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief granted finding the government's reinterpretation of § 1225(b)(2) unlawful. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner is currently detained in the custody of Federal Respondents at Henderson Detention Center pursuant to this new detention "policy," even though an immigration judge ordered her release on bond on August 4, 2025. She seeks a preliminary injunction ordering her

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

immediate release subject to the bond conditions imposed by the immigration judge. Because the Court finds Petitioner has satisfied the requirements for such preliminary relief, the Court enjoins Respondents from continuing to detain Petitioner on the basis that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

## II.   PROCEDURAL HISTORY

On October 28, 2025, Petitioner filed her Petition for a Writ of Habeas Corpus and Motion for Preliminary Injunction. ECF Nos. 1, 2. On November 4, 2025, the Honorable Judge Anne R. Traum ordered Respondents show cause in a response to these pleadings by November 24, 2025. ECF No. 5. On November 24, 2025, counsel for Respondent Warden, Henderson Detention Center, filed a notice of appearance, but no response has been filed to-date. ECF No. 6. Petitioner's counsel filed a notice of Respondents' non-opposition based on failure to respond on December 4, 2025. ECF No. 7. On December 11, 2025, this case was transferred to the undersigned Judge as related to three pending putative class actions before this Court. ECF No. 8.

This Court's Order follows.

## III.   BACKGROUND

### A.  Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's challenged new detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

### B.  Petitioner Ramirez

The Court makes the following findings of fact relevant to Petitioner's individual circumstances. Ms. Ramirez is a native of Mexico, who entered the United States without inspection at an unknown date and location several years ago. ECF No. 1 at 1, 3. Prior to her detention, Petitioner was "working, paying her taxes, and providing for her family." Id. at 3. After being arrested and detained by ICE at the Henderson Detention Center, Petitioner received a

1  custody redetermination hearing (bond hearing) on August 4, 2025. Id. at 1. The IJ granted Ms.
2  Ramirez release on bond in the amount of $3,000. Id. However, on August 13, 2025, DHS filed
3  EOIR Form 43, invoking the automatic stay under 8 C.F.R. § 1003.19. Id. at 2. DHS further filed
4  Form 26, Notice of Appeal, with the BIA on August 14, 2025, and Ms. Ramirez has been held in
5  mandatory detention ever since. Id.

### IV. LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

#### B. § 2241 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual

detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### V.   DISCUSSION

#### A. Failure to Respond

As an initial matter, the Court first addresses Respondents' total failure to respond to the Petition and instant Motion. This Court ordered Respondents to show cause for Petitioner's detention by November 24, 2025, in accordance with 28 U.S.C. § 2243. ECF No. 5. As of this Order, two and half weeks have passed since the show cause deadline. Respondents have not filed *any* response, nor any motion to extend, nor even a notice of appearance as to the majority of Respondents.

The Supreme Court has emphasized that habeas corpus proceedings, and the federal habeas statute, are intended to provide petitioners with "swift, flexible, and summary determination[s]." Preiser v. Rodriguez, 411 U.S. 475, 495 (1973) (citing 28 U.S.C. § 2243). While a respondent's failure to respond to a habeas petitioner's claims does not entitle that petitioner to default judgment, it is within the district court's discretion to enter a default judgment for petitioner in instances where respondent's failure to respond creates an excessive delay in proceedings. Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) (citing to Ruiz v. Cady, 660 F.2d 337, 341 (7th Cir. 1981), for the proposition that district courts have discretion to enter default judgment upon a government's failure to respond creating excessive delay). Further, where a respondent is guilty of long, inadequately explained delays, courts may presume that a petitioner is being detained illegally. See Ruiz, 660 F.2d at 340-41.

As of this Order, this Court will have ruled on forty highly similar cases where federal Respondents have been a party.[4] While there is a strong preference for habeas cases to be resolved on the merits, the Court cannot allow further delay given the liberty and due process interests at stake. For these reasons, the Court rules on the Motion and grants relief without a response from the federal Respondents and addresses the routine arguments that Respondents have raised in scores of cases before this Court.[5]

### B. Preliminary Injunction

The Court turns to the analysis of whether Petitioner has satisfied the requirements for preliminary injunctive relief. As discussed below, because the Court finds Petitioner is likely to succeed on the merits of her Petition and the remaining Winter factors weigh strongly in her favor, the Court finds she is entitled to preliminary relief.

### 1. Likelihood of Success or Serious Questions

First, the Court finds Petitioner has satisfied the most important Winter factor: she is likely to succeed on the merits of her claim that her detention without opportunity for release on bond

---

[4] Supra note 1.

[5] See, e.g., Escobar Salgado, 2025 WL 3205356; Duran, 2025 WL 3237451; Jacobo Ramirez, 2025 WL 3270137.

1  under § 1225(b)(2)(A), pursuant to Hurtado, violates the INA and the Due Process Clause.  See
2  Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits
3  is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th
4  1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a
5  preliminary injunction because of an alleged constitutional violation).

### i. *Automatic Stay*

Before turning to Petitioner's challenge to the lawfulness of her detention under the INA, the Court first addresses Petitioner's detention pursuant to the automatic stay under 8 C.F.R. § 1003.19(i)(2). This Court has already found the automatic stay is unconstitutional because it violates the procedural and substantive due process rights of noncitizen detainees like Petitioner. See Escobar Salgado, 2025 WL 3205356, at *10 (D. Nev. Nov. 17, 2025); Herrera v. Knight, _ F. Supp. 3d. _, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025). The Court incorporates by reference its reasoning and holding as to the automatic stay from these cases to this case. Id. Thus, the Court finds that Respondents' continued detention of Petitioner pursuant to DHS's authority, under 8 C.F.R. § 1003.19(i)(2), to stay the IJ's bond release order is unconstitutional for the same reasons discussed in and incorporated by referenced from Escobar Salgado and Herrera and therefore Petitioner will likely succeed on the merits of this claim. Id.

### ii. *The Lawfulness of Petitioner's Detention Under § 1225(b)(2)(A)*

The Court fully incorporates by reference its reasoning and holding regarding Respondents and the BIA's new interpretation of § 1225(b)(2)(A) from Escobar-Salgado. WL 3205356, at *10-26. As it did in Escobar-Salgado, the Court rejects Respondents' statutory interpretation here and finds Petitioner in this case is detained under § 1226(a) and its implementing regulations, because she is a resident with established ties to the country, and her most arrest and detention by ICE was not upon arrival and was far from any port of entry. Id. at *22.

### iii. *Due Process*

Petitioner also challenges her ongoing detention despite an IJ's finding that she is entitled to be released on bond as unconstitutional under the Due Process Clause of the Fifth Amendment. For the following reasons, the Court finds Petitioner is likely to succeed on the merits of her claim

that she is being detained in violation of her procedural and substantive due process rights on that basis as well.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., J.G.G., 604 U.S. at 673 (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .'") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (accord).

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard appropriate to the nature of the case." J.G.G., 145 S.Ct. at 1006 (internal quotation marks omitted); see also A. A. R. P. v. Trump, 605 U.S. 91 (2025). "'Procedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" Id. (quoting Carey v. Piphus, 435 U.S. 247, 259 (1978)). Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government. Immigration detention is civil detention, and civil detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special

justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

Even if the Court were to accept the government's new reading of § 1225(b)(2), it would still be faced with Petitioner's due process challenge to her prolonged detention despite an IJ's finding that he should be released. Indeed, the Ninth Circuit has questioned the constitutionality of § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government.

Rodriguez v. Marin, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court now turns to the likelihood of success on the merits of Petitioner's due process challenge to her detention.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner despite an IJ granting her release on bond. See Mathews, 424 U.S.

1 at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain continue to detain her despite the IJ's order that she be released on bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to her through a further bonding hearing before an IJ upon a showing of materially changed circumstances). The first Mathews factor thus weighs heavily in Petitioner's favor.

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner despite their failure to make an individualized showing that her detention is warranted. The near certainty of erroneous deprivation caused by this lack of process is demonstrated by the fact that an IJ in this case held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for her detention without bond.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because they require the government to establish that he presents a flight risk or danger to the community to continue detaining her for the pendency of removal proceedings. These procedures enforce the constitutional requirement that "once the flight risk justification evaporates, the only special

1  circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's
2  dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs
3  heavily in favor of Petitioner.
4        The third and final Mathews factor considers the "Government's interest, including the
5  function involved and the fiscal and administrative burdens that the additional or substitute
6  procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
7  government's interests in enforcing immigration laws, including "protecting the public from
8  dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest
9  order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the
10 individualized determination by an immigration judge, based on a review of evidence presented
11 by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing
12 removal proceedings, under existing, well-established procedures. In failing to articulate any
13 individualized reason why detaining Petitioner is necessary to enforce immigration law, the
14 question arises "whether the detention is not to facilitate deportation, or to protect against risk of
15 flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532–33
16 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a
17 person's liberty.
18       Moreover, the Court finds that limiting the use of detention to only those noncitizens who
19 are dangerous or a flight risk through existing bond procedures serves the government and public's
20 interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention.
21 Hernandez, 872 F.3d at 996 (Noting in 2017 that "the costs to the public of immigration detention
22 are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million.
23 Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each
24 day per person.").
25       In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and
26 therefore, her detention without the opportunity for release on bond likely violates her procedural
27 due process rights.
28                2.  Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of her physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary confinement is grave cause for concern. Accordingly, this Court further finds that Petitioner is likely being detained in violation of her substantive due process rights.

### 2. Irreparable Harm

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of preliminary injunctive relief. All. for the Wild Rockies, 632 F.3d at 1131. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that Petitioner's detention without the opportunity for release on bond violates her due process rights that she has carried her burden as to irreparable harm. Hernandez, 872 F.3d at 995. The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### 3. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting Nken, 556 U.S. at 435). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of

federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The Court finds that the government's interest in enforcing immigration law is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted. The Court merely enjoins Respondents from continuing to prevent Petitioner's release on the basis that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

Further, the government's new reading of the INA upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention who have hitherto been afforded release on bond. The attendant administrative, fiscal, and social costs of such a mass detention policy are difficult to fathom. Therefore, it is doubtful that this policy supports the government's interest in steady enforcement of the INA. Moreover, it is the government's new reading of the INA which subjects millions of individuals to mandatory detention that is creating the significant fiscal and administrative burden on the government. However, this is a burden of the executive branch's choosing, which is unilaterally being imposed on the public.

In contrast, the hardships faced by Petitioner and the public interest in granting injunctive relief weigh strongly in her favor. Detention has separated Petitioner from her family and incom and stripped her of her physical liberty. See Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiffs] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members) (quotation marks and citation omitted). And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2) and in violation of the Constitution, "neither equity or the public interest are furthered" by allowing Defendants to continue to violate the law—quite the opposite. See Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because

of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of her challenge to her detention, Petitioner is entitled to a preliminary injunction. Id.

### C. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas, 391 U.S. at 238. "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Petitioner—prolonged detention, after a constitutionally adequate bond hearing established that her continued detention was not warranted—is remedied by ordering her **immediate release**, subject to the bond conditions imposed by the IJ, and enjoining Respondents from preventing her release on the basis that she is detained under § 1225(b)(2).

### D. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation

modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that releasing Petitioner on bond will be costly. Therefore, the Court declines to impose bond beyond the amount imposed by an IJ under § 1226(a).

## VI.   CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Motion for Preliminary Injunction (ECF No. 2) is **GRANTED**.

Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner no later than **4:00 p.m. on December 12, 2025**. Petitioner's release will be subject to the bond conditions imposed by the IJ. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, she will have until **January 26, 2026**, to satisfy the monetary bond conditions.

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from denying Petitioner release on bond on the basis that she is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), including through invocation of the automatic stay as the Court has already found the automatic stay unconstitutional and adopts that finding here. Herrera, 2025 WL 2581792, at *13.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by **December 15, 2025**, confirming their compliance with this Order.

**DATED:** December 12, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**